Page 39 Mr. Bode..? Or your honors.... The damages awarded by the jury in this case are grossly excessive. The court erred in failing to grant a motion for a minute term of Delton Cut. With respect to the damages awarded for infringement under the Plant Variety Protection Act, the court in its order of July 5, 2005, justified that award based upon testimony that Syngenta received approximately $35 for releasing one 50-pound bag of the Coker 9663 variety. Well, what the testimony actually was of Mr. Farmer is that they would expect to see for registered seed, a different type of seed, $13.50, which counsel in his brief refers to as a technology fee, plus 22 royalties. And no, I'm not kidding. $35 based upon a positive, not a market fee, but a positive $13 fee or $13.50 fee plus 22 royalties. Well, as the court appreciates under Section 2560 for the PVPA, for infringement, the owner of the intellectual property is entitled to only a reasonable royalty. And this court knows, through 100 years of precedent, that a reasonable royalty is generally the established royalty. The established royalty, well documented in the record, is $1. Per bag. $1 per bag. Therefore, a royalty of $35 per bag, 3,500% more, is grossly excessive and monstrous under Oinous and Brooktree in numerous cases establishing that standard. What is anomalous and peculiar here is I want the court to appreciate that Delta Cotton is a registered retailer of this same variety, and it sells for seed, this variety, for $13.50 a barrel and pays Syngenta a dollar royalty. Now, the court has approved a payment, if you will, by Delta Cotton of $35. Gordon, let me ask you something. You're talking about the damages, right? Yes. I expected you to get up and start talking about liability and saying why your client should not have been found liable here in the first place. Obviously, if you're not liable, you don't get to the damages issue, right? That's correct. I would have thought you'd start right off the bat with liability, arguing why you say there was error in the district court decision in that regard. Well, because I'm going to end around on that, and I'm going to argue that under the maximum recovery rule, the only miniature possible here is $3, because it's only with respect to three bags that damages have been shown. It's only with respect to those bags that origin has been shown. The trouble with the damages approach is that we give a great deal of discretion to courts, and there is a chain of reasoning which you're attacking. What about the other than reproductive services, however? Yes, I want to address that because for damages to accrue, there must be a pecuniary loss that's addressed. And here the record is clear, or I should say, perhaps, devoid of any evidence of any loss with respect to the 2,642 bags. There's no evidence that that was sold as seed, which would arguably cause a loss, because that would deprive Syngenta of that sale and that dollar royalty. There's no record of that. In fact, Castleberry said that they never divert from the feed bin that grain for seed. And Farmer, the head of marketing at Syngenta, said prior to filing this case, he had never heard of any brown bagging by Delta. In fact, he never even heard of DeltaCut. There's not one scintilla of evidence in this record that the element of a loss, that is a sale by DeltaCut of the seed for seed purposes, actually occurred, apart from the three bags that were sold. Wouldn't it be better for your position to say that there was no liability because no liability was established, so there are no damages? So why is the law in your favor? Did the district court make a mistake in determining liability? Well, we argue yes because we argue that it's implicit in Section 2541 that the infringement can only occur when there's a sale of the bag for seed purposes. That's what gives rise to the injury. Farmer said there's no loss to Syngenta if the seed is sold not for seeding purposes but for feeding purposes. I just look at it as an element of damages. If there were a technical violation because it was dispensed without the label, there can be no damages because there's no evidence in the record that it was sold for seed, thus depriving Syngenta of revenues. With respect to the Lanham Act, there can be no- Did the district court rely on current statutory provisions, including the other than reproductive services language in precluding evidence on that point? It's unclear, but apparently the court didn't have the benefit of that language. It seemed to rely on the Sinkers case and the Peoples case, both of which were based on the old statute, right? That's correct, Your Honor. That's correct. I just want to point out with respect to the Lanham Act, there's a complete failure of proof. The court in its decision said that the measure of damages was justified because the holder of the protected property is entitled to its profit margin times the units infringed. Well, the problem with that is it's just clear error. What the Lanham Act says is the company, in this case Syngenta, is entitled to the profits of the defendant. And the record shows that there was no profit. You keep focusing on damages, right? That's correct. Why aren't you arguing no liability? There is no liability for the Lanham Act because there could be no confusion, no confusion sold in the record. I'm just saying I remember Professor Friedman from my contracts course would always look at damages. We have an open and shut case for damages. But you don't get to damages. No liability is no damages. That's correct. I would think you'd be saying no liability, no liability, no liability. We stand by our argument in the brief. I think it's just simpler for this Court, which is obviously busy, to just look at damages because there is no question that the damages are excessive. There's no damages under the Lanham Act that have been proved, no actual damages. What about the notice provision? Well, we believe that that was properly before the Court. And when the Court made repeated decisions denying Delta the opportunity to tell the jury that there was no way of knowing the contents of the seed in the bin. But, of course, Syngenta showed that it marked its seeds when they sold them the first time. Do they have an obligation to require the second generation seller to also mark that seed? The second generation, arguably. I mark my bag and sell it to Judge Schall. Do I have to tell him at that time, now when you resell this seed, make sure it's marked. If you send this on to Judge Gaiarzi, you have to mark it. Do I have that obligation? According to the structure, Judge Schall isn't permitted to resell that seed that he grows for seed purposes, only for feed purposes. That's the way the system works. Well, in this case, Mr. Boyd. And that's the way it worked here. This gentleman came in and purchased this for a deer plot. They were trying to accommodate the guy. They sold him $13.50. What is a deer plot? You put the seed in the ground, and you grow wheat, and supposedly the deer come and eat it. To keep them off your other crops? Well, they hunt them. They kill them. So it's to lure the deer. That's right. Supposedly this seed was to lure the deer. That's correct. So they accommodated this fellow. Rather than sell him $13.50 good seed for that purpose, they sold him $3.50 material for this purpose. You see? Does a price differential make any difference as far as notice is concerned? I think it makes a difference in this sense. Why would Delta Cotton sell certified seed for $3.50 as seed when it can command $13.50 a bag? It wouldn't do it. And that's why Kesselsberry said we've never done this. We haven't infringed because we haven't sold this material as seed. And, of course, for that reason, there's no liability. But for that reason, there's no damages either, and that's why I concentrated on damages. Because that's, I think, an open and shut case. Very easy for the court to rule on. Do you want to save your rebuttal time? I would like to. Okay. Thank you. Mr. Henry? Good morning. I'm going to direct the court's attention to two cases. One is Monsanto v. Ralph. That's a case involving a patent case. But as PVP is to be interpreted as a patent-like statute, I think it's applicable. Monsanto v. Ralph is the case I'm going to discuss in response to the challenge that these damages were grossly excessive. The second case is Pioneer v. Holden. That's the Eighth Circuit case. It talks about the reverse palming off as taken under the Lanham Act for unfair competition in the Eighth Circuit. That is binding precedent. Nowhere is there a mention or response or discussion by the appellant of that controlling case. Is that binding precedent on us? Absolutely. Why? To the extent that the Lanham Act unfair competition claims are governed by the circuit in which the court sits. Now, the PVPA is jurisdictionally your province. The Lanham Act, however, is governed by the Eighth Circuit law in this case. And we have a keen case on point. It is a reverse palming off in the agricultural industry. I'm not sure our circuit's, except because we have trademark jurisdiction, you know, we handle our own trademarks cases. We usually follow our own trademark law. But let's go on to the 25. Do you want to respond to that? No, I appreciate that point. But to the extent that this is an appeal as to the sufficiency of the evidence, I believe that squarely is within the Eighth Circuit. And therefore, we should look to the Eighth Circuit opinion and pioneer beholden. Thank you. The statute expressly says other than reproductive services, carves that out. And it seemed to me that the record showed that the district court continually disallowed evidence that would have shown that this was sold for other than reproductive purposes. Because Delta Cotton played trial by ambush. 2,500 pages is the discovery I received at the trial exhibits two weeks before trial. But this is a statutory requirement. Doesn't there have to be allowed evidence in on a statutory requirement? Admissible evidence. I mean, it's an element. It is a defense. It is absolutely a defense that the defendant can prove, notwithstanding the federal rules of discovery. 2,500 pages were presented to the court. The facts themselves suggest that there was a sale here that was for other than reproductive purposes. I want to use it to, as I have learned today, kill deer. That's a little different than growing crops. The statute states, seed shall not be dispensed in a form that is propagatable without notice thereof. The federal notice. That is the statute that was not modified. That is the statute this court ruled upon. But other than reproductive, in the statute. Syngenta, as a plaintiff, is in the position of establishing evidence to the jury that seed matching Coker 9663 variety was dispensed, i.e. sold, to a member of the public in a form which can be propagatable. Why then is it a deer plot? Mr. Bode concedes the seed is purchased for intention of planting, i.e. growing, germinating, and growing to fruition. This seed is capable of doing it. It was sold for that purpose. Syngenta has a limited burden. Sold in a condition that can be propagated without market notice. I guess to get back to the point, the district court did not allow evidence on a statutory defense. The statutory defense, which one are you speaking of? Reproductive. Other than reproductive services. That was not raised by Delta Cotton to the extent that Delta Cotton's main argument during trial was we did not have, we did not know all that wheat in our bin from which we drew to then clean and bag and sell to the public was actually Coker 9663. Now, the evidence in the case, and Mr. Casselberry, the general manager of Delta Cotton, said yes, 75 percent of the wheat market in Arkansas is Coker 9663. Yes, I sell it with the properly noticed bags. Yes, I have actual notice that this seed is federally protected. I sell it to my farmers and they come back and bring it to me as a grain facility. He had actual notice. Did you object to a jury instruction that would have instructed the jury to consider whether this was sold for reproductive purposes or something else? That was never, I did not object to a jury instruction either proffered or suggested by the Delta Cotton. Rather, we proceeded forward with a straight statutory. We did not proceed after intentional conduct. We did not, it was a straight analysis of was the seed sold to a member of the public in a form that can be propagated without the required marking and notice. Now, there's no dispute it was sold to an investigator and to 2600 other bags of the stuff was sold without notice. There's no dispute that it is our material. We gave the access to the evidence. Did the district court air in excluding evidence on the other than reproductive services exemption? The district court did not air in excluding timely disclosed evidence. Now, the evidence that we're speaking of. Why is it untimely disclosed? Because it's the facts right at the outset suggest that there's a question as to whether it's going to be there for growing crops as opposed to killing deer. That was not advanced by the defense counsel. It is a... There was never an attempt by defense counsel to suggest that the sale fit within the exemption? He said it was going to be for feed. He failed to disclose any competent witness in a timely fashion that could testify the purposes to which this seed was used. But Mr. Henry, the judge, it doesn't seem... I understand what you're saying, but it doesn't seem that the judge barred the evidence on any kind of a ground like that or any kind of an argument on that kind of a ground. I mean, I don't see the judge saying that this is untimely. The judge says, if you bring this up in direct, did you sell this for feed? Is that a legitimate purpose? I will sustain the objection. I will turn to the jury and say the issue is not whether it was sold for feed, but the issue is whether it is propagatable. And I'll explain to the jury that objection so they will know. And that's at 168 through 169 of the joint appendix. And the judge seems to be, as I think Judge Rader and Judge Garza suggested, the judge seems to be making a ruling based upon her view of the statute. It doesn't seem to be saying you've waived this or it's untimely or anything like that. In the pretrial conference that was not apparently contained within the appendix, there is a mass... Actually, it is contained within the appendix. There is a mass exclusion of evidence. Mr. Hanshaw, which is the defense lawyer at the time, please provide me all of the witnesses. And I objected to 26 witnesses. He was left with one witness that he intended to call, and that is only the manager of Delta Cotton. He also finally disclosed 2,500, 2,600 pages of the records of Delta Cotton, the business records. I objected at that time for surprise, unfair advantage, trial by ambush, whatever you want to call it. And she agreed with my position. Because at pretrial hearing, there was a complete exclusion of all witnesses that could testify as to the actual use of this wheat, she was proper in excluding the witness to establish that defense. But why would she exclude the witnesses to establish the defense? Because it would be hearsay testimony, completely. The general manager speculating on what his... Was that the submission of the witnesses? Is that what they said, the proof that they would... Delta Cotton presented only one witness, the general manager. But the others were struck. The others were struck for untimely disclosure and for failure to disclose in full. We had no idea... Untimely disclosure or untimely... You're saying that they were dismissed because they were only testifying a hearsay evidence. No, sir. I'm saying two weeks before trial, I received a lengthy witness list and a giant stack of documents in a shrink-wrapped paper that the defense counsel purported to be his case to establish whatever he intended to produce. I objected. This trial had gone on for two and a half years. I had not seen these documents. I had not seen these witnesses, was not given an opportunity to examine these witnesses through deposition, especially two weeks before trial. The defense counsel in this case did not play by the rules. The defense counsel in this case did not object to any hearsay at all through the trial. The defense counsel in this case decided to appear on the court steps ready with a case that I had no idea what he was going to discuss. In the interest of fairness, the judge excluded those people. But it doesn't seem, I guess, Mr. Henry, it doesn't seem like that that's the basis she's ruling on, if you just look at the trial. I mean, let me ask you this, under the statute, under the statutory scheme, do you, if you were defending, if you were defending someone in Delta Cotton's position, would you not, perhaps, feel that under the statutory, don't you feel that under the statutory scheme a defendant, leaving aside a timeliness issue, should be able to argue that the transfer was for other than propagation purposes? Just under the statute, leave aside for a moment that the question about, you know, this particular case and the timeliness, looking at the statute. Doesn't it appear that a defendant, such as Delta Cotton or the XYZ Co-op or whoever, doesn't it appear under the statute that such a defendant has the right to argue that the sale was for other than reproductive purposes? Yes. If I were representing a defendant in a PVPA case, I would try to identify in a timely fashion all the sales that I made of this weed wheat. Yet, if I put on my other hat for Syngenta, I would depose those people and say, did you plant it, was it for deer plots, okay, or is it for erosion control? Let's talk about erosion control. Some form of wheat to use as grass temporarily and then burn down and kill that grass to plant soybeans the next season, whatever, for the winter crops to keep the soil. I was never given that opportunity to examine the uses to which those people put that wheat to see if it was for erosion control and not for seed. The undisputed evidence in this case is that Delta Cotton put onto the market 2,600 bags, not barrels, bags of wheat without restriction, which is the key concern for Syngenta. Also, I might note, feed wheat is the black market approach to seed in a brown bag. They're trying variety not stated or VNS. That's a moniker they attempt to use. Feed wheat is a moniker they attempt to use. They say, so long as it's feed wheat, we're in compliance. This jury proved that not to be the case because the limited evidence in this case by the defendant established only that they were aware of the federally protected status of COCA 9663 and that they released it from their door with no questions and no restrictions and that it tested positive as COCA 9663. In my moments of remaining time. What about the price differential between the $3.50 and the $13? Would that tell someone that maybe it's not the seed wheat? Absolutely not. Do they sell it at that low price all the time? Absolutely, and that is what is so devastating to Syngenta. Is that evidence in there to that effect? Delta Cotton buys this as a commodity, pays maybe $1.50 a unit, $2 a unit. They're still making the money selling it illegally, although they don't have to pay the investment costs that Syngenta does in terms of keeping it in a state seed certification or in putting it in properly marked bags or in making sure it's substantially free of contaminants or in getting the state seal approval that there's a proper germination rate. They bring it in. They know it's COCA 9663 because the season before he sold it to the farmer. He then takes the harvest to his grain facility, pays $2 for it, and he's making $1.50 for every bag, perhaps maybe more. The market demands fluctuate. At this point in time, it was $3.50. We've also found $6, $7, $4. It fluctuates with the demand. Is that in the record? You mean the $6? I'd have to look to see if we properly appendix Dr. Phil Farmer's testimony as to the range that he found. Monsanto v. Ralph is a case decided by this court about approximately a year and a half ago. In that situation, the technology fee was $5 on soybean seed. Compared to our situation, we have a technology of $1 a bag. In the Monsanto v. Ralph, they replanted 1,234 bags of soybeans. In this case, sold for replanting without restriction, 2,642. In that situation, the jury verdict did a straight-line computation at $55 a bag for soybeans times 796. You get $66,000 in damages. I urge you to take a look at that case because there's many more similarities. In this situation, we had a straight-line computation of $35 a bag at 75% is $6,75. This decision today is controlled by the logic of Monsanto v. Ralph. In this case, the jury awarded 75% of the damages as established by experts. In the Monsanto v. Ralph, they awarded 80% of the damages as established by experts. The holding of the Monsanto v. Ralph states the $5 technology fee is a reasonable royalty. Quote, the technology fee is a royalty. To be sure, but it is a royalty for only a narrow, contractually agreed-upon use of the seed. And in this situation, it's also undisputed that Delta Cotton released without restriction the Blockbuster variety of Coker 9663. Thank you, Mr. Henry. Thank you for your time. Mr. Bodie, you have four minutes remaining. Very quickly, Judge Rader, of course you're correct. Right at the beginning of trial, it's on A169. The court ruled that 2541 is the statute of strict liability. Evidence of whether it was sold for seed or for feed is irrelevant, immaterial. Now, Mr. Henry says his argument is that he says, well, in the proper situation, a defendant could make this sold for feed, not for propagation argument. But, in fact, what we see here in the transcript is the result of failure to disclose the defense and the witnesses in pretrial proceedings. You heard what he said. Yeah, that's not correct. What is your response to that, Mr. Bodie? That's not correct. First of all, Castleberry, as a company representative, was intimately familiar with these sales and was competent to testify about who the user was and for what purpose they were made. In fact, he was permitted in one instance, did testify that he never sold wheat from the feed bin for seed purposes. That's the testimony that's in the record. He said, and why would I? I make more money selling certified coca seed for seed. That's the testimony that's right in the record. And, furthermore, Mr. Henshaw was deprived the opportunity to cross-examine St. Jenna's witnesses on that very subject in Woodhead. The gentleman who came in and purchased this purportedly for a deer plot, he did testify, didn't he? He did testify. He did testify. And, of course, none of those three bags were actually propagated, so there was no infringement there. They're still sitting, presumably, maybe in the courthouse. So there is a failure of proof. It's not the burden of Delta Company. It's the burden of the plaintiff to establish the elements of violation. And they didn't do it. There is no record of that. But you've got to show the other than reproductive purposes, don't you? You've got to show the other than reproductive purposes, don't you? For a defense. Yes, it's a defense. And do you have to give proper notice and give an opportunity for depositions and cross-examinations and so forth? Did all of that occur? On the question of other than reproductive purposes. Well, because of the court's ruling, there was no... Well, but the court's ruling is the beginning of trial. We're talking about a step ahead of that. Is there any depositions taken on the question of other than reproductive purposes? Not to my knowledge, Your Honor. Why not? That would seem to me to be an important thing to have had depositions and cross-examinations on. Well, because Ms. Kessler was prepared to propound on that subject completely, fully, and accurately. And with respect to damages, Your Honor, it's clearly a singentive burden to establish the loss, which necessitates that they show that it was an infringing sale, that is, a sale for C purposes. They did not do so. There's not one scintilla of evidence in this record to satisfy that element to recover damages. Thank you, Mr. Bode. Thank you very much, Your Honor. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.